[Docket Nos. 80 & 87.]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

<table>
<tr><td>

FRED THOMAS, JR.,

        Plaintiff,

   v.

SGT. B. WEISS, OFFICER KING, MAPLE SHADE POLICE CHIEF,

        Defendants.

</td><td>

Civil No. 21-cv-14554-RMB-EAP

**OPINION**

</td></tr>
</table>

**RENÉE MARIE BUMB, Chief United States District Judge:**

*Pro se* Plaintiff Fred Thomas, Jr. (Thomas) brings this Section 1983 civil rights lawsuit against Defendants Maple Shade Police Department (MSPD) Sergeant Brian Weiss (Weiss), MSPD Officer Anthony King (King), and the MSPD Police Chief (who Thomas has not identified), alleging they violated his constitutional rights. Thomas mainly claims Defendants violated his civil rights by: (1) not investigating his complaint that another individual threatened him; and (2) falsely arresting and imprisoning him (even though he later pleaded guilty to some of his original charges). Although difficult to decipher, Thomas' Complaint also appears to raise malicious prosecution, fabrication of evidence, retaliatory arrest, and selective enforcement claims.[1] Defendants move for summary judgment, arguing, among other things, Thomas cannot show the officers violated his constitutional rights and his guilty pleas bar his false arrest and imprisonment claims, and thus Thomas' claims fail as a matter

---

[1] Because Thomas is proceeding *pro se*, this Court construes his complaint "liberally" because "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

of law.  Thomas has not opposed Defendants' summary judgment motion, but has moved for discovery seeking the officers' body camera footage from the officers who allegedly failed to investigate his criminal complaint against another individual.

For the below reasons, the Court **GRANTS** Defendants' summary judgment motion (Docket No. 80) and **DENIES** Thomas' discovery motion (Docket No. 87).  The Court dismisses Thomas' Complaint with prejudice.

## I.  BACKGROUND

### A. Procedural Delays

Before turning to the facts, the Court briefly addresses some procedural matters that delayed this Court's decision.  The Court first administratively terminated the motions because the Court was unable to view various video exhibits Defendants submitted to support their summary judgment motion.  [Docket No. 91.]  The Court ordered Defendants to resubmit those videos in a specific format so the Court could watch them.  [*Id.*]  This took some time.  [Docket Nos. 92, 94.]  Defendants recently refiled their summary judgment motion papers to conform to this Court's order, and the Court received the ordered flash drive containing the video evidence.  [Docket No. 94.]

Meanwhile, unsatisfied with the pace of this case (and another case he had pending in the Court), Thomas sued, among others, the undersigned and the Magistrate Judge presiding over this matter.  [*Thomas v. Bumb*, Docket No. 3:24-cv-01406-RK-RLS.]  Because Thomas sued two judges handling this case, the Court took no action on the pending motions.  By Local Civil Rule 40.1, Thomas' lawsuit against the judicial officers was transferred to the Honorable Robert Kirsch, U.S.D.J., in the Trenton vicinage to determine "if the suit [was] patently frivolous or judicial immunity plainly applies."  *Thomas v. Bumb*, 2024 WL 816068,

at *1 (D.N.J. Feb. 27, 2024) (internal quotation marks omitted).  Judge Kirsch found judicial immunity applied and dismissed that lawsuit with prejudice.  *Id.* at *3.

After Judge Kirsch tossed Thomas' lawsuit, Thomas filed letters with the Court and left the undersigned a voicemail complaining about the progress of his case, and purportedly making his case against the entry of summary judgment.  [Docket Nos. 93, 95, 98.]  He claims the Court never notified him about Defendants' summary judgment motion, and encloses a letter Defendants' counsel sent to the Court about this Court's Order requiring Defendants to refile their video evidence.  [Docket No. 95.]  In the voicemail, Thomas claims the Court allowed Defendants to "put another summary judgment motion in, because [the Court] never sent [him] the mail."  [Docket No. 93 (Tr. 2:4 to 6).]  He goes onto claim that Defendants' counsel "was going to get professionals to take stuff out the bodycam" and "[h]e did it a lot of times."  [*Id.* (Tr. 2:8 to 10).]  Thomas ends his voicemail calling the undersigned the "chief demon," and as "the Chief Judge over New Jersey," the undersigned "corrupt[s] all the judges."  [*Id.* (Tr. 4:1 to 8).]

Having considered Thomas' letters and his voicemail, as well as the docket in this matter, the Court makes some observations about his complaints.

First, Thomas has repeatedly failed to apprise the Court of his correct mailing address. Throughout this case, the Clerk of the Court has received back many Orders and Notices mailed to Thomas as undeliverable.  [Docket Nos. 6, 14, 31-32, 33, 74-77, 84, 89.]  Thus, Thomas has repeatedly failed to comply with his obligation to inform the Court of his address changes.  *Archie v. Dep't of Corrections*, 2015 WL 333299, at *1 (D.N.J. Jan. 23, 2015) ("Local Rule 10.1(a) creates an affirmative duty for litigants to inform the court of any change in their

address within seven days of said change.  Failure to comply with this rule 'may result in the imposition of sanctions by the Court.'").

Second, Thomas seemingly has not been checking the docket in this matter.  The Court administratively terminated Defendants' summary judgment and Thomas' discovery motions in November 2023.  [Docket No. 91.]  The Clerk of the Court mailed the Notice of Electronic Filing containing that Order to Thomas at the address he provided.  [Docket Nos. 90-91.]  Almost three months passed by before Thomas sent his letter to the Court addressing that Order.  [Docket No. 95.]  Thomas' *pro se* status does not relieve him of his obligation to monitor the court docket for filings.  *See Thompson v. Sears,* 2022 WL 6423265, at *3 (D.N.J. Sept. 19, 2022) ("[R]egardless of his *pro se* status and whether he received the Court's courtesy copy of its . . .  Order, 'it is Plaintiff's responsibility to monitor the Court's docket for activity.'" (quoting *Crock v. City/Town, or Boro of Mt. Lebanon, Penna*, 2010 WL 11693658, at *2 (W.D. Pa. Aug. 13, 2010))); *see also Farzan v. Bayview Loan Serv. LLC*, 2020 WL 13240130, at *2 (D.N.J. Dec. 9, 2020) (refusing to reinstate two bankruptcy appeals after the Court dismissed them, and finding plaintiff's explanation for delay not credible where plaintiff "has not proffered any explanation for his failure to monitor the court docket in order to remain abreast of his court filings").  Had Thomas fulfilled his obligation to check the docket, he would have known the Court ordered Defendants to refile their summary judgment motion so the Court could view the video evidence.  He did not.

Third, and as will be detailed more fully below, Thomas has not filed any opposition to Defendants' summary judgment motion.  Rather, in his latest filing, he asks this Court to "throw[] out" Defendants' summary judgment motion, claiming he never received any discovery.  [Docket No. 95.]  According to Thomas, "Defendants can't present the evidence

because it will prove [his] claim true." [*Id.* (cleaned up).]  As will be discussed, the Court notes that Defendants have reiterated several times they do not have any video- or audio-recordings Thomas seeks.   In addition, Defendants' counsel wrote to the Honorable Elizabeth Pascal, U.S.M.J., in January 2023 detailing all the video and audio evidence Defendants produced in discovery.  [Letter from Defs.' Counsel dated January 27, 2023 (Docket No. 68).]  In that letter, Defendants' counsel explained that MSPD did not retain any video- or audio-recordings that Thomas has moved to compel.  [*Id.*]  Moreover, when Defendants refiled their summary judgment motion papers as required by this Court's Order, Defendants served a copy of those papers and the video exhibits on Thomas.  [Docket No. 94.]  Thus, there is nothing in the record supporting Thomas' claim that he never received any discovery.  And Thomas has still not filed any opposition to Defendants' summary judgment motion.   Nor has he asked for more time to do so.

   With Thomas' lawsuit against the undersigned dismissed, and Defendants having resolved the issues with their video evidence, the Court now decides the motions.

**B.  Thomas' Interactions with MSPD Officers**

   Thomas' lawsuit against Weiss, King, and the unnamed MSPD Police Chief is based on two interactions he had with MSPD officers at the Hometown Studios Motel (Motel), his place of residence, on March 7, and March 16, 2020, respectively.  [Defs.' Statement of Material Facts in Supp. of Mot. for Summ. J. (SOMF) ¶ 1 (Docket No. 94-1)[2].]

   On the evening of March 7th, Thomas called the MSPD to report that another Motel patron had threatened him.  [*Id.* ¶ 2; *see also* Certif. of J. Brooks DiDonato (DiDonato Certif.)

---

[2] As noted, Defendants resubmitted their summary judgment motion papers to conform to this Court's text order on the video exhibits.  [Docket Nos. 91, 94.]  The Court will cite to the revised motion papers.

¶ 4, Ex. C (Docket No. 94-3).]  Multiple officers responded to the Motel, including King and Weiss.  King arrived at the Motel and spoke to Thomas who was upset that the patron called the police on Thomas earlier over playing his radio, and that he and the patron have had "ongoing issues."  [*Id.*]  King then spoke to the patron who supposedly threatened Thomas.  [SOMF ¶ 4.]  The officer then spoke to Weiss and both officers left the scene.  [*Id.* ¶ 4.]  Thomas does not dispute that sequence of events.  [Compl. ¶¶ 4(c), 6 (Docket No. 1).]

According to Thomas, after the officers left, the patron began looking at Thomas "in a threatening manner" so he called the MSPD again.  [Compl. ¶ 6.]  Weiss and King were back at the Motel momentarily.  [SOMF ¶ 5.]  Thomas alleges that as soon as Weiss exited his vehicle, the patron threatened Thomas in front of the sergeant claiming "I'm going to beat [your] old ass!!!."  [Compl. ¶ 6.]  According to Thomas, Weiss "started threatening" him by telling Thomas if he calls "911 back [he's] going to jail."  [*Id.*]  Police records reveal that King spoke to Thomas and advised him of his right to pursue a complaint against the patron "through the municipal court," and Weiss advised Thomas of a municipal ordinance prohibiting excess emergency calls.  [DiDonato Certif. ¶ 5, Ex. D; *see also* SOMF ¶ 5.]  According to Defendants, Weiss told Thomas that if he continued to call the police he may be issued a ticket for violating the municipal ordinance.  [SOMF ¶ 5.]  Thomas does not allege that any MSPD officer used any force against him, or arrested him on March 7th.  [SOMF ¶ 6; *see also* Compl. ¶ 6.]

About a week-and-a-half later, on March 16th, the Motel manager, Jacqueline Tafaro (Tafaro), called 911 to report that Thomas had threatened her while brandishing a bat.  [SOMF ¶ 16; *see also* DiDonato Certif. ¶ 6, Ex. E.]  Weiss arrived at the scene and spoke to Tafaro who told the officer that Thomas had walked by the Motel's front office several times

carrying a bat calling Tafaro a "bitch" and making threatening statements, like "I could get you too" and "I could go crazy on you too." [DiDonato Certif. ¶¶ 7, 20, Exs. F, S (Weiss Body Camera Footage).] At one point, Tafaro saw Thomas strike a wall next to the front office with the bat. [*Id.*] Another Motel employee saw Thomas carrying the bat while making "aggressive and threatening statements" to Tafaro. [*Id.*; *see also id.* ¶¶ 8, 19, Exs. G, R (MSPD Officer Justin Pike Body Camera Footage).]

Weiss then went to Thomas' room where he questioned him about Tafaro's complaint. [DiDonato Certif. ¶¶ 7, 20, Exs. F, S.] According to Weiss, Thomas acknowledged he "had an ongoing issue with someone in the office" and Tafaro. [DiDonato Certif. ¶ 7, Ex. F; *see also id.* ¶ 20, Ex. S.] Weiss questioned Thomas about the bat, and when asked, Thomas stated he just brought it "to hit stuff with," but denied striking anything near the front office with the bat. [*Id.*] The police handcuffed Thomas and recovered a softball bat from his room. [*Id.*]

Based on Tafaro's and the other employee's statements, the police arrested Thomas and charged him with terroristic threats, possession of a weapon for an unlawful purpose, and unlawful possession of a weapon. [SOMF ¶¶ 8-10.] A state grand jury later indicted Thomas on those charges and an added charge of certain persons not to have a weapon based on his prior criminal convictions. [DiDonato Certif. ¶ 9, Ex. H; *see also* Defs.' Mem. of Law in Supp. of Summ. J. (Defs.' Br.) 2 n.3 (Docket No. 94).]

While detained in county jail on his criminal charges, Thomas filed a complaint against Weiss through a letter addressed to "Mayor Lou Mancello." [SOMF ¶¶ 23-24; *see also* Compl.] In the letter, Thomas complained that Weiss violated his civil rights by: (1) failing to adequately investigate the March 7th incident; and (2) falsely arresting and incarcerating him on March 16th. [Compl.; *see also* DiDonato Certif. ¶ 11, Ex. J.] Thomas felt that Weiss

purposely disregarded his complaint on March 7th.  [Compl.; *see also* DiDonato Certif. ¶ 11, Ex. J.]  The MSPD Internal Affairs (IA) unit received Thomas' letter and Detective Sergeant Scott Wallace (Wallace) immediately began to investigate Thomas' complaint.  [SOMF ¶ 25.]

As part of his investigation, Wallace requested video recordings of the events from March 2020.  [*Id.* ¶ 26.]  He was unable to obtain any recordings because the "Arbitration System" only stores video recordings for 120 days and more than six months had passed from the March 2020 incidents.  [*Id.*]  Wallace was also unable to obtain phone and audio recordings because the six-month retention period had lapsed.  [*Id.* ¶ 27.]  Wallace and another IA officer then interviewed Thomas at the county jail.  [*Id.* ¶ 28.]  In the interview, Thomas discussed his interaction with Weiss and King on March 7th, and his issues with Tafaro.  [DiDonato Certif. ¶ 12, Ex. K (Wallace Body Camera Footage).]  Yet the focus of his complaint centered on Weiss' handling of Thomas' 911 calls on March 7th.  [*Id.*]  Indeed, when asked "what [his] complaint is against [Weiss]," Thomas explained his "complaint is [he] couldn't exercise his rights of calling 911 and being accommodated."  [*Id.* (12:26 to 12:50).]

After interviewing Thomas, Wallace interviewed Weiss on Thomas' complaint.  [SOMF ¶¶ 31-33.]  Based on his investigation, Wallace recommended exonerating Weiss of Thomas' complaint because:  (1) the complaint largely focused on Weiss' demeanor and Thomas' disapproval of the amount of attention he received; and (2) there was "no evidence to suggest any improper conduct."  [DiDonato Certif. ¶ 14, Ex. M.]  MSPD ultimately exonerated Weiss concluding the officer "followed the appropriate department policies and procedures" and notified Thomas of the IA unit's findings.  [*Id.*]

Thomas eventually pleaded guilty to his possession of a weapon for an unlawful purpose and certain persons not to have a weapon charges. [DiDonato Certif. ¶ 9, Ex. H.] In exchange for his guilty plea, the prosecution dismissed Thomas' terroristic threats and unlawful possession of a weapon charges. [*Id.*] The state court sentenced Thomas to a four-year prison term with a one-year period of parole ineligibility. [*Id.*]

### C. THOMAS' LAWSUIT

Shortly after the MSPD exonerated Weiss, Thomas filed this § 1983 action against Weiss, King, and the unnamed MSPD Police Chief, claiming the officers violated his constitutional rights. [*See generally* Compl.] Although difficult to decipher, Thomas claims Defendants violated his constitutional rights by not investigating his complaint that another Motel patron threatened him, even though the patron apparently made the threat in Weiss' presence. [*Id.* ¶ 6.] Thomas asserts that Weiss violated his civil rights by threatening him with jail time if he calls 911 again, which Thomas equates to selective enforcement. [*Id.*] He also asserts that Weiss arrested him on March 16th based on Tafaro's false complaint and fabricated charges. [*Id.*] Thomas denies admitting threatening Tafaro and claims Weiss' contrary assertion is false. [*Id.*] Thomas claims that Weiss only arrested him on March 16th because he called Weiss a "racist" on Twitter and complained about him to the town's mayor. [*Id.*] Thomas seeks $10 million in damages, and asks the Court to let Weiss "know he's not above the law." [*Id.* ¶ 7.]

### II. THE MOTIONS

Defendants move for summary judgment, arguing all of Thomas' claims fail as a matter of law. [Defs.' Br. at 1.] First, Defendants contend Thomas cannot show that any MSPD officer deprived him of his constitutional right on March 7th because Thomas bases

his § 1983 claim on Defendants' failure to investigate or charge the Motel patron that supposedly threatened him. [*Id.* at 4-5.] Pointing to the Third Circuit's decision in *Boseski v. N. Arlington Mun.*, 621 F. App'x 131 (3d Cir. 2015), Defendants argue that Thomas—as a private citizen—does not have a constitutional or federal right to have the police investigate or bring criminal charges against another private citizen. [*Id.*] Because Thomas lacks such a right, Defendants assert any § 1983 claim relating to Thomas' interaction with MSPD officers on March 7th fails. [*Id.*]

Turning to Thomas' false arrest and false imprisonment claims from his arrest on March 16th, Defendants assert Thomas' guilty pleas to charges underlying his arrest bar those claims. [*Id.* at 6-7.] Relying on the United States Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), Defendants argue that Thomas cannot maintain his § 1983 claim for false arrest and false imprisonment because he pleaded guilty. [*Id.*] Defendants point out that the guilty plea is enough to bar a § 1983 claim. [*Id.* at 7 (citing *Gilles v. Davis*, 427 F.3d 197, 209 n.8 (3d Cir. 2005)).]

Next, Defendants assert they are entitled to qualified immunity, and so, they are immune from any liability to Thomas. [*Id.* at 8.] They argue Thomas cannot show that any MSPD officer deprived him of his constitutional or federal rights on either March 7th or March 16th— a critical requirement to strip police officers of immunity from money damages. [*Id.* at 11.] Given that failure, Defendants ask the Court to find them immune from any liability for Thomas' claims. [*Id.*]

Lastly, Defendants contend Thomas' claim against the MSPD Police Chief should be dismissed for failure to state a claim. [*Id.* at 12-13.] They argue Thomas' Complaint has no allegation the Police Chief had any involvement with Thomas on either March 7th or March

16th. [*Id.*]  In other words, they assert Thomas has alleged no facts that the Police Chief had any personal involvement in the interactions with the MSPD officers Thomas claim violated his constitutional rights.  [*Id.*]  Thus, Defendants contend Thomas' claim against the Police Chief fails.  [*Id.*]

Thomas has not filed any opposition to Defendants' summary judgment motion. Instead, as noted, Thomas filed a discovery motion seeking body camera footage from MSPD officers he interacted with on March 7th.  [Pl's Br. in Supp. of Disc. Mot. (Pl's Br.) 2 (Docket No. 87-2).]  While Thomas claims "everything" Defendants say in their summary judgment papers "is hearsay and a lie," he does not identify what aspect of the motion he disputes.  [*Id.*]  Rather, he argues that the body camera footage from MSPD officers from March 7th will show that Weiss "did not follow protocol of his department and he is clearly in violation."  [*Id.*]  Thomas also complains that Defendants never answered any of his discovery.  [*Id.*]

Defendants oppose Thomas' discovery motion for several reasons.  They argue first that Thomas never served any written discovery request or deposition notices on them. [Defs.' Letter Br. in Opp'n to Thomas' Disc. Mot. (Defs' Opp'n Br.) 1 (Docket No. 88).] Next, Defendants assert they complied with their Federal Rule of Civil Procedure 26 obligations by providing Thomas with their initial disclosures, which included body camera and motor vehicle footage.  [*Id.*]  Turning to Thomas' request for body camera footage from March 7th, Defendants contend that "no video or audio from that date had been maintained" because MSPD officers arrested no one on that date, and Thomas' complaint to MSPD's IA unit "was linked to the interaction occurring on [March 16th], as that was the one resulting in [Thomas'] arrest."  [*Id.* at 2.]  Defendants assert they explained to the Court in January 2023

why they could not produce any body camera footage from March 7th, and Thomas did not raise the issue again until Defendants moved for summary judgment.  [*Id.*]

## III. LEGAL STANDARD

Courts will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" only if it might impact the "outcome of the suit under the governing law." *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 261 (3d Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A genuine dispute exists if the evidence would allow a reasonable jury to find for the nonmoving party. *Id.*

Where, as here, the non-movant fails to oppose summary judgment by written objection, memorandum, affidavits or other evidence, courts "will accept as true all material facts set forth by the moving party with appropriate record support."  *Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev.*, 922 F.2d 168, 175 (3d Cir. 1990) (quoting *Jaroma v. Massey*, 873 F.2d 17, 21 (1st Cir. 1989)); *see also Allebach v. Sherrer*, 2005 WL 1793726, at *2 (D.N.J. July 27, 2005) ("In considering an unopposed summary judgment motion, it is entirely appropriate for this Court to treat all of the facts properly supported by the movant to be uncontroverted."); *see also* L. Civ. R. 56.1(a) (providing that "any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion").   Courts will grant unopposed summary judgment motions only if "appropriate," and only when the moving party shows it is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(e); *see also Anchorage*, 922 F.2d at 175.

## IV.  DISCUSSION

"Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Shuman v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005).  The statute "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Id.*  To prevail on a § 1983 claim, a plaintiff must prove that the defendant, "acting under color of state law," violated his constitutional rights or rights secured by federal law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A.  Thomas' Failure to Investigate and Bring Criminal Charges Claim Fails

Thomas' § 1983 claim based on Defendants' failure to investigate his complaint against the Motel patron who supposedly threatened him on March 7th is a nonstarter because "there is no constitutional right to the investigation of another."  *Lee v. City of Phila.*, 627 F. App'x 175, 177 (3d Cir. 2015).  Indeed, a plaintiff has "no cognizable claim against a government entity for its failure to investigate or bring criminal charges against another individual." *Boseki*, 621 F. App'x at 135 (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)); *see also Fuchs v. Mercer Cty.*, 260 F. App'x 472, 475 (3d Cir. 2008) (affirming dismissal of § 1983 plaintiff's lawsuit based on defendants' failure to investigate his private criminal complaint, explaining "[t]here is no statutory or common law right, much less a constitutional right, to [such] an investigation" (alterations in original) (quoting *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007))).  Because Thomas lacks any constitutional or federal right to have the police investigate his criminal complaint or bring criminal charges against another, that aspect of his § 1983 claim fails as a matter of law, and thus the Court will dismiss it.  *Batista v. City of Perth*

*Amboy*, 2020 WL 1329980, at *9 (D.N.J. Mar. 23, 2020) ("Because there is no private constitutionally protected interest to an investigation or prosecution of another individual, [Plaintiff] has not alleged a cognizable claim underneath 42 U.S.C. § 1983 . . . ."); *see also Creaig v. Camden Cty. Police Dep't*, 2018 WL 2980388, at *3 (D.N.J. June 13, 2018) (dismissing with prejudice § 1983 plaintiff's claim against police officer and department for failing to file criminal charges against other private citizens because plaintiff has no such right).[3]

### B. The Court Denies Thomas' Discovery Motion for Body Camera Footage from March 7th because the Videos Do Not Exist and the Motion seeks Irrelevant Information

Because Thomas' discovery motion relates to the March 7th incident, the Court addresses that motion before turning to Thomas' other claims.

Federal Rule of Civil Procedure 26 gives parties the right "to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).   A party moving to compel discovery must first show that the information is relevant. *King v. Verizon New Jersey, Inc.*, 2023 WL 5817126, at *4 (D.N.J. Sept. 6, 2023). Once the moving party establishes relevancy, the party opposing discovery "must demonstrate in specific terms why a discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper." *Id.* (quoting *Cost. Containment Express, LLC v. Horizon Healthcare Servs.*, 2017 WL 5951619, at *2 (D.N.J. Nov. 30, 2017)).   While discovery is broad, courts cannot compel discovery of materials that don't exist. *Kokinda v. Pa. Dep't of Corr.*, 2018 WL 1035261, at *2 (W.D. Pa. Feb. 23, 2018) (explaining courts can neither

---

[3] Although unclear, if Thomas' bases his § 1983 claim on Weiss' failure to follow MSPD's internal procedures or guidelines on responding to 911 calls, that claim fails too.  *See Manigault v. King*, 339 F. App'x 229, 232 (3d Cir. 2009) (ruling police officers' "abandonment" of training "protocol cannot form the basis for a remedy under § 1983 or deprive them of qualified immunity"); *see also Green v. City of Paterson*, 971 F. Supp. 891, 903 (D.N.J. 1997) ("Violation of a police department procedure . . . does not necessarily infringe upon a constitutional right giving rise to a Section 1983 claim.").

"compel the production of things that do not exist . . . nor . . .compel the creation of evidence by parties who attest that they do not possess the materials sought by an adversary in litigation").

Here, Defendants have repeatedly represented to the Court that they do not have any audio- or video-recordings from Thomas' interaction with MSPD officers on March 7th because the recordings no longer exist.  [Defs' Opp'n Br. at 2; *see also* Letter from Defs.' Counsel dated January 27, 2023 (Docket No. 68).]   By making these representations, Defendants are certifying to the Court that to the best of their knowledge, information, and belief, their factual contentions "have evidentiary support."  Fed. R. Civ. P. 11(b)(3).  Having reviewed the record, the Court accepts Defendants' representations that they do not have any recordings from March 7th concerning Thomas.  *Bailey v. Libr. Assistant Jurnak*, 2021 WL 12143066, at *3 (M.D. Pa. June 28, 2021) (accepting defendants' representation that certain video footage "was not preserved as part of the investigation and no longer exists"); *see also Kokinda*, 2018 WL 1035261, at *3 (accepting defendants' representation that video footage no longer existed because "routine video is only kept until memory is exhausted and then they are recorded over").

Indeed, nothing in the record contradicts Defendants' representations that the recordings from March 7th do not exist.  *See Davis v. Pa. Dep't of Corr.*, 2018 WL 2292755, at *5 (M.D. Pa. May 18, 2018) (denying discovery request for video footage where defendants responded "they have no responsive video footage" because "[t]here is no evidence whatsoever in the record before us to contradict the representation of counsel in the defendants' discovery responses that no responsive video footage exists").   In fact, when Wallace opened his investigation into Thomas' complaint (almost a full year before Thomas

filed this lawsuit), he tried to collect the recordings, but learned the department did not retain them.  [SOMF ¶¶ 26-27.]  Police records from Wallace's investigation reveal that MSPD's records retention policy requires the department to maintain audio and video recordings for at least 120 days.  [DiDonato Certif. ¶ 3, Ex. B.]  By the time Wallace received Thomas' complaint, six months had passed, and so the videos from March 7th were not retained per the retention policy.  [*Id.*]  According to Defendants, MSPD officers' body camera and motor vehicle footage from March 16th "have . . . been recovered as they were held by the Burlington County Prosecutor's Office as evidence on the charges against [Thomas.]"  [SOMF ¶ 36.]

Since the recordings Thomas seek do not exist, this Court cannot compel Defendants to produce them, and so, the Court denies Thomas' discovery motion.  *Kokinda*, 2018 WL 1035261, at *3 ("When discovery requests seek material that does not exist, there is nothing to compel."); *see also Bailey*, 2021 WL 12143066, at *3 (denying plaintiff's discovery request for video surveillance footage because videos no longer existed).

All the more reason to deny Thomas' discovery motion is he seeks irrelevant information.  *Davis*, 2018 WL 2292755, at *4 (denying § 1983 plaintiff's discovery request seeking information on prison's administrative regulations because request sought irrelevant information since prison official's "'failure to adhere to administrative regulations does not equate to a constitutional violation' cognizable under § 1983" (quoting *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir.  1993))).  Indeed, Thomas seeks the body camera footage to support his § 1983 claim for Defendants' failure to investigate his criminal complaint made on March 7th.  [Pl's Br. at 2.]  A private citizen does not have a constitutional right to have the police investigate or charge another private citizen with a crime.  *Boseski,* 621 F. App'x at 135.  Thus, the Court denies the discovery motion.

### C. Thomas' False Arrest and False Imprisonment Claims Fail

Thomas' false arrest and false imprisonment claims fail because MSPD officers had probable cause to arrest him.

The Fourth Amendment of the United States Constitution protects against "unreasonable searches and seizures."  U.S. Const. Amend. IV.  To prevail on a false arrest claim under the Fourth Amendment, Thomas must show Defendants arrested him and they lacked probable cause to do so.  *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020).  If Defendants lacked probable cause to arrest Thomas, that arrest and subsequent detention ripen into a false imprisonment claim under § 1983.  *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995).  Thus, to prevail on an false imprisonment claim, Thomas must prove:  (1) that he was detained; and (2) the detention was unlawful—that is, lacked probable cause.  *Harvard*, 973 F.3d at 202.  False arrest and false imprisonment claims under § 1983 rise and fall on the existence of probable cause.  *Id.* at 199 ("False arrest and false imprisonment claims will 'necessarily fail if probable cause existed for any one of the crimes charged against the arrestee.'" (quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 477 (3d Cir. 2016))).

At the summary judgment stage, probable cause is assessed "based upon the 'totality-of-the-circumstances' available to the arresting officer."  *Id.* at 200 (quoting *Dempsey*, 834 F.3d at 467-68).  Probable cause is "[f]ar from demanding proof of guilt beyond a reasonable doubt" and only requires a showing of "a fair probability that the person committed the crime at issue."  *Dempsey*, 834 F.3d at 467 (quoting *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000)).  "'[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable

17

person to believe that an offense has been or is being committed by the person to be arrested." *Id.* (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995)).

Third Circuit courts typically find statements from victims or witness of crimes to be sufficient to establish probable cause to arrest.  *Id.* at 478; *see also United States v. Pickford*, 252 F. App'x 440, 442-43 (3d Cir. 2007) (finding officers had probable cause to arrest because police received information from assault victim); *Sharrar v. Felsing,* 128 F.3d 810, 818 (3d Cir. 1997) ("When a police officer has received a reliable identification by a victim of his or her attacker, the police have probable cause to arrest."), *abrogated on other grounds by Curley v. Klem*, 499 F.3d 199 (3d Cir. 2007); *Wooleyhan v. Cape Henlopen Sch. Dist.*, 2011 WL 1875710, at *9 (D. Del. May 17, 2011) (explaining that police have probable cause to arrest based on a victim's statement because officers "can assess the victim's demeanor, find the story credible, and rely on the identification to make an arrest"); *accord United States v. Shaw*, 464 F.3d 615, 623 (6th Cir. 2006) ("An eye witness's statement that he or she saw a crime committed or was the victim of a crime is generally sufficient to establish probable cause.").  Police officers can generally assume that victims are credible because not only did the alleged crime happen to them, "their motive is ostensibly concern for their safety or others' safety." *Collick v. William Paterson Univ.*, 2021 WL 2374388, at *7 (D.N.J. June 10, 2021).   Indeed, police officers need not independently investigate "to verify statements made by a credible eye-witness if those statements provide him with probable cause to arrest." *Vanderklok v. United States*, 140 F. Supp. 3d 373, 381 (E.D. Pa. 2015).

Given the totality of the circumstances here, Weiss and King had probable cause to arrest Thomas for, among other things, threatening Tafaro with a bat.  [DiDonato Certif. ¶ 20, Ex. S.]  Before Weiss even spoke to Thomas, Tafaro told the sergeant that Thomas had

threatened her while holding a bat.  [*Id.*]  She added she saw Thomas strike a wall at the Motel with the bat.  [*Id.*]  While Weiss spoke to Tafaro, another Motel patron told the officer she too saw Thomas with a bat.  [*Id.*]  When Weiss questioned Thomas about the incident, Thomas admitted to having the bat and brought it that day "to hit stuff with."  [*Id.*]  Tafaro's and the other patron's statements, coupled with Thomas' admission to having the bat, gave Weiss and King probable cause to arrest him.  *Pickford*, 252 F. App'x at 442-43*; see also Gresh v. Godshall*, 170 F. App'x 217, 221 (3d Cir. 2006) (finding police's warrantless search of vehicle permissible because "[t]he police had probable cause to search [plaintiff's] car based on a named witness's statement that she had seen [plaintiff] carry electronic equipment from the burglary victims' home to his vehicle").  Indeed, Thomas' admission about having the bat gave the officers some corroboration of Tafaro's and the other Motel patron's statements.  Because Weiss and King had probable cause to arrest Thomas, Thomas' false arrest and false imprisonment claims fail.[4]  *Harvard*, 973 F.3d at 202.

**D. Thomas' Malicious Prosecution and Fabrication of Evidence Claims Fail**

Although difficult to decipher, Thomas appears to allege that Weiss fabricated evidence against him to "keep him in jail."  [Compl. ¶ 6.]  According to Thomas, Weiss' claim that Thomas admitted threatening Tafaro on March 16th is "false."  [*Id.*]  The Court has endeavored to understand Thomas' conclusory claims.  As best the Court can tell, Thomas appears to raise fabrication of evidence and malicious prosecution claims—that is, Weiss lied about Thomas admitting to threating Tafaro so the sergeant could arrest and detain him.

---

[4] Since the Court finds Weiss and King had probable cause to arrest Thomas, the Court need not address Defendants' arguments on whether they are entitled to qualified immunity, or whether under *Heck v. Humphrey*, 512 U.S. 477 (1994), Thomas' guilty pleas bars him from asserting his false arrest or false imprisonment claims.

To prevail on a malicious prosecution claim, Thomas must show:  (1) Defendants started a criminal proceeding against him; (2) the proceeding ended in his favor; (3) Defendants lacked probable cause to start the proceeding; (4) Defendants "acted maliciously or for a purpose other than bringing [him] to justice;" and (5) he "suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Le. L. v. Burlington Cty.*, 2021 WL 6125777, at *3 (D.N.J. Dec. 28, 2021) (quoting *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007)).   For the favorable termination requirement, Thomas must show "the criminal prosecution ended without a conviction." *Thompson v. Clark*, 596 U.S. 36, 49 (2022).

While prosecutors normally initiate criminal proceedings, a police officer can be liable for malicious prosecution if "the officer knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion." *Le. L,* 2021 WL 6125777, at *3 (internal quotation marks omitted) (quoting *Dress v. Fall Twp.*, 2017 WL 2215270, at *3 (E.D. Pa. May 19, 2017)); *see also Gallo v. City of Phila.*, 161 F.3d 217, 220 n.2 (3d Cir. 1998) ("Decisions have recognized that a § 1983 malicious prosecution claim might be maintained against one who furnished false information to, or concealed material information from, prosecuting authorities.").   Thus, a police officer who furnishes false or misleading information to the prosecutor, fails to disclose exculpatory evidence, or "otherwise interferes with the prosecutor's exercise of independent judgment as to whether to prosecute" may be liable for malicious prosecution. *Mills v. City of Phila.*, 2023 WL 6520488, at *11 (E.D. Pa. Oct. 5, 2023).

To the extent Thomas asserts a malicious prosecution claim against Defendants, the claim fails because:  (1) Weiss had probable cause to bring criminal charges against Thomas

even if Thomas did not admit to threatening Tafaro; and (2) Thomas cannot show the criminal proceedings ended in his favor since he pled guilty.

First, as explained above, Weiss and King had probable cause to arrest and charge Thomas with, among other things, threatening Tafaro based on her and another Motel patron statements.  Again, Tafaro told the officers that Thomas had threatened her while holding a bat, and he struck a Motel wall with the bat.  [DiDonato Certif. ¶ 20, Ex. S.]  The other Motel patron told Weiss that she saw Thomas with the bat.  [*Id.*]  Tafaro's and the other patron's statements were enough for the officers to lawfully arrest Thomas.  *Pickford*, 252 F. App'x at 442-43*; see also Gresh*, 170 F. App'x at 221.  So Thomas' malicious prosecution claim (if he raises one) fails because he cannot show the officers lacked probable cause to start criminal proceedings against him.  *See Wright v. Cty. of Camden*, 2023 WL 8542612, at *6 (D.N.J. Dec. 11, 2023) (holding plaintiff's malicious prosecution claim failed "because probable cause existed to arrest and detain [p]laintiff"); *see also Scully v. City of Jersey*, 2018 WL 6804274, at *5-6 (D.N.J. Dec. 27, 2018) (finding plaintiffs' false arrest, false imprisonment, and malicious prosecution claims failed because officers "has probable cause to stop, detain, and charge [p]laintiff").

Second, by pleading guilty, Thomas cannot show the criminal proceedings against him ended favorably—that is, without a conviction.  *Thompson*, 596 U.S. at 49; *see also Brown v. Elmwood Park Police Dep't*, 2019 WL 2142768, at *2 (D.N.J. May 16, 2019) (dismissing § 1983 plaintiff's malicious prosecution claim because by pleading guilty, plaintiff could not show the criminal proceedings ended in his favor).  That the terroristic threats charge—the only relevant charge Thomas' claims Weiss fabricated evidence about—was dismissed as part of a plea agreement does not change the outcome.  *Moore v. Pennsylvania*, 2022 WL 7375509, at *3

21

(3d Cir. Oct. 13, 2022) ("And to the extent that [plaintiff's] malicious prosecution claim was premised on the charges that were dismissed or otherwise not prosecuted as a part of his guilty plea, these charges were not 'favorably terminated.'" (quoting *Curry v. Yachera*, 835 F.3d 373, 378 (3d Cir. 2016))); *see also Pittman v. Metuchen Police Dep't*, 441 F. App'x 826, 829 (3d Cir. 2011) (ruling § 1983 plaintiff's malicious prosecution claim failed because plaintiff's criminal charges were dropped as part of an agreement with prosecution, and as such, that "termination is not considered favorable for purposes of a malicious prosecution action"); *accord Burnam v. Weld Cty. Sheriffs*, 2024 WL 1051949, at *11 (D. Colo. Mar. 11, 2024) (collecting cases analyzing malicious prosecution claims following *Thompson*, and concluding "the weight of authority" finds that "the disposal of a criminal proceeding pursuant to a plea agreement, wherein a defendant agrees to plead guilty to some charges in exchange for the dismissal of others, . . . does not constitute a favorable termination"). Indeed, "[a] prosecutor's decision to drop charges as part of a compromise with the accused does not amount to a 'favorable termination' of state proceedings for purposes of permitting the accused to maintain a subsequent claim under § 1983 for malicious prosecution." *Marable v. West Pottsgrove Twp.*, 176 F. App'x 275, 281 n.1 (3d Cir. 2006). Because Thomas pleaded guilty leaving him with multiple convictions, his malicious prosecution claim (to the extent he asserts one) fails, and so, the Court dismisses it.

Turning to the fabrication of evidence claim, Thomas' Complaint offers only conclusory allegations insufficient to plead a plausible claim. To plead a fabrication of evidence claim, Thomas must show that there was "a reasonable likelihood that, absent that fabricated evidence, [he] would not have been criminally charged." *Black v. Montgomery Cty.*, 835 F.3d 358, 371 (3d Cir. 2016). By that standard, Thomas must "draw a meaningful

connection between [his] particular due process injury and the use of fabricated evidence against [him]." *Id.* at 372. Thomas must prove that the alleged fabricated evidence "was so significant that it could have affected the outcome of the criminal case." *Id.* (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3d Cir. 2014)). This is a high bar and "it will be an unusual case in which a police officer cannot obtain a summary judgment in a civil action charging him with having fabricated evidence used in an earlier criminal case." *Halsey*, 750 F.3d at 295.

Thomas cannot sustain a fabrication of evidence claim by simply disputing police testimony or claiming the testimony is incorrect even if "it turns out to have been wrong." *Black*, 835 F.3d at 372. Put simply, "he said, she said" disputes cannot support a fabrication of evidence claim. *Boseman v. Upper Providence Twp.*, 680 F. App'x 65, 70 (3d Cir. 2017) (affirming dismissal of § 1983 plaintiff's fabrication of evidence claim because plaintiff "merely 'denies' the conclusions [officer] made in his police report"). Rather, Thomas must present "persuasive evidence supporting a conclusion that the proponents of the evidence' are aware that evidence is incorrect or that the evidence is offered in bad faith." *Black*, 835 F.3d at 372 (quoting *Halsey*, 750 F.3d at 295).

The Court has scoured the record to locate where Weiss allegedly stated Thomas admitted to threatening Tafaro. Thomas has pointed to no record evidence to support that claim. In any event, Weiss' police reports on the March 16th incident state:

> This officer asked Thomas if he had an issue with someone in the office and he ultimately acknowledged that he has had an ongoing issue with [Tarfaro]. When questioned about the bat, [Thomas] stated that he had just purchased it and was carrying it in from his vehicle. When asked why he purchased the bat he stated he bought it to "hit stuff with." He denied striking anything with it while he was near the office.

[DiDonato Certif. ¶ 7, Ex. F.]  To the extent Thomas equates Weiss' statement about Thomas acknowledging he had issues with Tafaro as Thomas admitting threatening her, Thomas reads too much into that statement.  Weiss' body camera footage supports his statement in the police report because the footage shows Thomas explaining in detail his ongoing problems with Tafaro.  [*Id.* ¶ 20, Ex. S.]  Given the body camera footage, and Thomas' failure to identify record evidence supporting his fabrication claim, there is no fabrication of evidence before the Court.

That said, Weiss did not need Thomas' admission to threatening Tafaro to arrest and charge him.  Even if the Court excises that alleged admission from the totality of circumstances, Weiss and King still had probable cause to arrest and charge Thomas for threatening Tafaro and the weapons offenses.  Earlier, the Court explained Tafaro's and the other Motel patron's statements gave the officers probable cause to arrest and charge Thomas. Thus, the officers had information independent of Thomas' supposed admission to justify arresting and charging him.  Said another way, Thomas cannot show that "absent fabricated evidence, [he] would not have been criminally charged."  *Black,* 835 F.3d at 371.

Thomas also failed to show the use of his so-called admission "was so significant that it could have affected the outcome of [his] criminal case."  *Id.* at 372 (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3d Cir. 2014)).  Indeed, setting aside Tafaro's and the other witnesses' statements about Thomas' conduct, *see* DiDonato Certif. ¶¶ 19-20, Exs. R-S, Thomas pleaded guilty to possession of a weapon for an unlawful purpose and certain persons not to have a weapon charges, *id.* ¶ 9, Ex. H.   As part of his plea agreement, the prosecution dismissed Thomas' terroristic threats and unlawful possession of a weapon charges.   [*Id.*]   Thus, Thomas cannot show the use of fabricated evidence—his supposed admission to threatening

Tafaro—caused him to suffer a deprivation of liberty.  *See Reyes v. City of New York*, 992 F. Supp. 2d 290, 298 (S.D.N.Y. 2014) (rejecting plaintiff's claim that he was denied a fair trial by the use of fabricated evidence because plaintiff pled guilty and the prosecution dismissed the charge "that the purportedly fabricated evidence created" and the dismissed charge "formed no part of his criminal sentence"); *see also Jones v. Hobeck*, 2023 WL 7026959, *7 (W.D. Pa. Sept. 27, 2023) (finding plaintiffs' guilty pleas to certain offenses barred plaintiff's fabrication of evidence claim relating to those offenses).  So Thomas' fabrication of evidence claim (if he raises one) fails, and thus the Court dismisses it.

### E.  Thomas' First Amendment Retaliation Claim Fails

Again unclear, Thomas appears to raise a First Amendment retaliation claim against Weiss.  [Compl. ¶ 7.]  Thomas claims Weiss arrested him on March 16th because Thomas called the officer a "racist" and made other disparaging remarks about him on Twitter following their March 7th interaction.  [*Id.*]  Defendants do not address Thomas' retaliation claim in their summary judgment papers.

"'[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).  To prevail on a First Amendment retaliation claim, Thomas must show:  "(1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation." *George v. Rehiel*, 738 F.3d 562, 585 (3d Cir. 2013) (quoting *Eichenlaub v. Twp. of Ind.*, 385 F.3d 274, 282 (3d Cir. 2004)).  A "plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Nieves*, 587 U.S. at 402.  Probable cause to arrest will normally doom a retaliatory

arrest claim in all but the narrowest circumstances—that is, "circumstances where officers have probable cause to arrest, but typically exercise their discretion not to do so" like in cases of jaywalking. *Id.* at 406. This is so because "[i]n such cases, an unyielding requirement to show the absence of probable cause could pose 'a risk that some police officers may exploit the arrest power as a means of suppressing speech.'" *Id.* (quoting *Lozman v. City of Riviera Beach, Fla.*, 585 U.S. 87, 99 (2018)). To fall within those narrow circumstances, Thomas must "present[] objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.*

Like his false arrest and false imprisonment claims, the existence of probable cause is fatal to Thomas' retaliatory arrest claim. *Fehl v. Borough of Wallington*, 2023 WL 385168, at *2 (3d Cir. Jan. 25, 2023) (affirming dismissal of § 1983 plaintiff's First Amendment claim for retaliatory arrest because plaintiff's "arrest and prosecution were supported by probable cause"). Weiss had probable cause to arrest Thomas based on Tafaro's statement that Thomas threatened her while holding a bat, which other witnesses corroborated. [DiDonato Certif. ¶¶ 19-20, Exs. R-S.] Because Weiss had probable cause to arrest Thomas, his retaliatory arrest claim fails. *Nieves*, 587 U.S. at 408 (holding arrestee's retaliatory arrest claim failed as a matter of law because the police had probable cause to arrest him); *Lund v. City of Rockford, Ill.*, 956 F. 3d 938, 944 (7th Cir. 2020) (ruling plaintiff's retaliatory arrest claim failed because officer had probable cause to arrest); *see also Ramon v. Stone*, 2023 WL 3092189, at *6 (D.N.J. Apr. 26, 2023) (finding plaintiff's retaliatory arrest claim failed as a matter of law because police had probable cause to arrest him).

And Thomas' Complaint lacks any allegation to invoke the narrow exception to the general rule that the existence of probable cause dooms a retaliatory arrest claim. *Nieves*, 587

U.S. at 406.   Indeed, the Complaint contains no allegation that Weiss or any other MSPD officer rarely arrested individuals who threatened others while armed with a bat, or that other similarly situated persons were not arrested.   *Gonzalez v. Trevino*, 42 F. 4th 487, 492-93 (5th Cir. 2020) (holding plaintiff's retaliatory arrest claim failed because probable cause existed for her arrest and plaintiff failed to offer evidence that similarly situated individuals who mishandled a government petition were not arrested), *cert. granted*, 142 S. Ct. 325 (2023); *see also Lund*, 956 F. 3d at 947 ("[Plaintiff] has not supplied any 'objective evidence' that 'similarly situated individuals not engaged in the same sort of protected speech' have not been and would not be arrested for driving the wrong way down a one-way street" (quoting *Nieves*, 139 S. Ct. at 1727)).

"Probable cause defeats a retaliatory arrest claim in all but the most narrow of exceptions."   *Lund*, 956 F. 3d at 948.   This case is not within those exceptions.   Accordingly, the Court dismisses Thomas' retaliatory arrest claim.

### F.  Thomas' Selective Enforcement Claim Fails

Although Thomas presses a selective enforcement claim, *see* Compl. ¶ 7, he has not adequately supported this claim with plausible allegations or evidence explaining how he was subject to selective enforcement.   As best the Court can tell, Thomas claims that he was subjected to selective enforcement based on his repeated calls to 911 on March 7th and Weiss' supposed threat to Thomas that if he called 911 again, the officer would arrest him.   [*Id.*] According to Thomas, Tafaro called the police multiple times on Thomas before March 16th, but was not arrested.   [*Id.*]   Thomas, on the other hand, was arrested on March 16th on charges he claims were false.   [*Id.*]

To prevail on a selective enforcement claim, Thomas must show: (1) "that he was treated differently from other similarly situated individuals, and (2) that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor . . . or to prevent the exercise of a fundamental right." *Suber v. Wright*, 574 F. App'x 207, 211 (3d Cir. 2014) (omission in original) (quoting *Dique v. N.J. State Police*, 603 F.3d 181, 184 n.5 (3d Cir. 2010)). Under the Equal Protection Clause, "persons are similarly situated 'when they are alike in all relevant aspects.'" *Lasche v. New Jersey*, 2022 WL 604025, at *6 (3d Cir. Mar. 1, 2022) (quoting *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008)). Thomas cannot rely on "mere unequal treatment or adverse effect" to support his selective enforcement claim, but "must provide evidence of discriminatory purpose." *Karns v. Shanahan*, 879 F.3d 504, 521 (3d Cir. 2018) (quoting *Jewish Home of E. Pa. v. Ctrs. For Medicare & Medicate Servs.*, 693 F.3d 359, 363 (3d Cir. 2012)).

To start, the Court struggles to determine what laws Weiss supposedly enforced against Thomas in a discriminatory manner, and when. If Thomas bases his selective enforcement claim on his interaction with MSPD officers on March 7th, that claim fails. Weiss and King did not "enforce" any law against Thomas on March 7th. The officers did not detain, use force, or arrest him. [SOMF ¶ 6; *see also* Compl. ¶ 6.] They did not even issue him a summons. Rather, the record reveals Weiss told Thomas about a municipal ordinance prohibiting excess emergency calls, and if Thomas continued to call 911, the police may cite him for violating the ordinance. [DiDonato Certif. ¶ 5, Ex. D; *see also* SOMF ¶ 5.] Because Thomas has not opposed Defendants' summary judgment motion, the Court accepts those facts as true. *Anchorage Assocs.*, 922 F.2d at 175; *see also Allebach*, 2005 WL 1793726, at *2.

And even if Weiss threatened to arrest Thomas and throw him in jail for calling 911 as Thomas claims, *see* Compl. ¶¶ 6-7, Thomas has not alleged a civil rights violation since there is no constitutional right to be free from the mere threats of arrest.  *Huertas v. City of Camden*, 2004 WL 7339363, at *10 (D.N.J. June 30, 2004) ("To the extent that Plaintiff's § 1983 claim is based on a constitutional right to be free from threats of arrest, such a claim must fail, as no such constitutional right exists."); *see also Page v. Forry*, 2009 WL 3109828, at *2 (D. Del. Sept. 29, 2009) (explaining "[v]erbal abuse and harassment does not rise to the level of a constitutional violation"); *Dick v. Gainer*, 1998 WL 214703, at *5 (N.D. Ill. Apr. 23, 1998) ("There is no constitutional right to be free from *threats* of arrest; an actual civil rights violation must occur before a cause of action arises under § 1983." (emphasis in original)), *aff'd*, 172 F.3d 52 (7th Cir. 1998).   Nor has Thomas alleged that the threat of arrest chilled him from exercising any other constitutional right.  *Speese v. Beyer*, 2012 WL 4018003, at *6 (M.D. Pa.  Aug. 8, 2012) ("[T]he Third Circuit has recognized that verbal threats are actionable under § 1983 when accompanied by a chilling effect on the exercise of a constitutional right.").  Thus, any selective enforcement claim, as currently pled, arising from Thomas' interaction with MSPD officers on March 7th fails.

Turning to his March 16th arrest, Thomas has failed to show that the police treated him differently than other similarly situated persons.  Again, Weiss and King arrested and charged Thomas for threatening Tafaro while holding a bat.  [SOMF ¶¶ 8-10; *see also* DiDonato Certif. ¶¶ 19-20, Exs. R-S.]  Thomas identifies no similarly situated persons that those officers did not arrest and charge for threatening another with a bat, and so, his selective enforcement claim fails.  *Karns*, 879 F.3d at 521 (dismissing selective enforcement claim by plaintiffs arrested for preaching without a permit because plaintiffs presented no evidence the police

treated similarly situated individuals differently and failed to "even identify other individuals who might be similarly situated"); *see also Stevens v. Stewart*, 2016 WL 3002374, at *6 (D.N.J. May 24, 2016) ("The Court finds that Plaintiff has not pleaded any facts showing that he [was] differently than other similarly situated individuals, *i.e.*, that non-West Indian or non-minority individuals were not arrested for violating TROs.").  Thus, the Court dismisses any selective enforcement claim arising from Thomas' interaction with MSPD officers on March 16th.

### G. Thomas' Unknown Claims against the Unnamed MSPD Police Chief Fail

Lastly, Thomas' claims against MSPD Police Chief (who Thomas has not identified) fail because Thomas has alleged no facts of the Chief's personal involvement in the supposed civil rights violations.

To be liable in a § 1983 action, a defendant "must have personal involvement in the alleged wrongs to be liable . . .  and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved."  *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (internal citations and quotation marks omitted).  This is so because a plaintiff cannot rely on vicarious liability in a § 1983 action.  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  Indeed, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Id.*  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence," but these allegations "must be made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

While naming the MSPD Police Chief as a defendant, Thomas has alleged no facts about the Chief's involvement in either the March 7th or March 16th interactions Thomas bases this § 1983 action.  Indeed, the Complaint is silent on the Chief's actions or inactions, or

whether the Chief knew about Thomas' interactions with MSPD officers.  Without pleading any facts on the Chief's personal involvement in the supposed civil rights violations, Thomas' claims against the Chief fail to state a claim, and therefore, the Court dismisses them.  *Baraka*, 481 F.3d at 210 (affirming dismissal of § 1983 claim against unknown defendants because plaintiff failed to "allege specific, personal involvement on the part of unknown defendants"); *see also Taylor v. City of Jersey City*, 2023 WL 6997250, at *5-6 (D.N.J. Oct. 24, 2023) (dismissing § 1983 claim against "County Chief of Detectives" because complaint lacked any allegation of official's personal involvement in the alleged constitutional violation since complaint "contains no specific facts that illustrate such wrongful conduct, let alone [official's] participation, knowledge, or acquiescence in such constitutional or civil rights violations"); *Croom v. City of Philadelphia*, 2023 WL 6626130, at *5 (E.D. Pa. Oct. 11, 2023) (dismissing § 1983 claim against police commissioner because plaintiff alleged no facts that commissioner had personal involvement in the alleged unconstitutional stop and search of plaintiff's vehicle and arrest).

## V. CONCLUSION

For the above reasons, the Court **GRANTS** Defendants' summary judgment motion (Docket No. 80) and **DENIES** Thomas' discovery motion (Docket No. 87).  The Court dismisses Thomas' Complaint with prejudice.

An accompanying Order of today's date shall issue.

**s/Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge

Dated: June 4, 2024